*In re* GENERAL ORDER OF OCTOBER 11, 1990.

First District (3rd Division)  No. 1—90—3675

Opinion filed December 22, 1993.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Leslie Robbins and Kathleen G. Kennedy, of counsel), guardian *ad litem.*

JUSTICE CERDA delivered the opinion of the court:

The public defender of Cook County (public defender) appeals from the denial of its motion to vacate or to stay the general order of October 11, 1990 (the general order), concerning procedures for the treatment of sick or injured minors, issued by the presiding judge of the juvenile division of the county department of the circuit court of Cook County (the Juvenile Division). The public defender argues on appeal that: (1) the presiding judge lacked authority to enact the general order because it exceeded the scope of a circuit court's authority to enact general orders or to make rules; (2) the general order conflicted with existing statutes; and (3) the general order was void as an improper exercise of legislative power by the judiciary. We reverse.

On October 11, 1990, Arthur N. Hamilton, the presiding judge of the Juvenile Division, issued the following general order:

"WHEREAS, the Juvenile Court Act, Illinois Revised Statutes Chapter 37, Section 802—5, 803—7, 804—4, 805—5 authorizes Law Enforcement Officers to take into custody certain described minors, including:

1. Those found in any street or public place suffering from any sickness or injury which would require medical care, medical treatment or hospitalization;

2. Minors who are neglected as to medical or other remedial care;

3. Minors whose environment is injurious to their welfare; and

WHEREAS, Law Enforcement Officers are required by Section 802—6, 803—8, 804—5, 805—6 of the Juvenile Court Act to take such minors, without unnecessary delay, to the nearest Juvenile Police Officer; and

WHEREAS, Law Enforcement Officers and Juvenile Police Officers may need medical information to assist them in determining the proper placement for such minors; and

WHEREAS, the parents or custodians or guardians of such minors may be unavailable or unwilling to give consent to a medical examination conducted for the purpose of furnishing such information.

IT IS HEREBY ORDERED that any Law Enforcement Officer or Juvenile Police Officer having custody of a minor pursuant to the Juvenile Court Act is authorized to consent to the medical examination of such minor.

IT IS FURTHER ORDERED that such examination may conducted [sic][1] pursuant to his consent without the consent of the parents or guardian.

IT IS FURTHER ORDERED that said authority to consent to medical examination shall be and is hereby declared terminated and without force, upon delivery by the officer of such minor to his parents, guardian, custodian or other responsible person or to the place designated by the Court for the reception of minors."

The public defender filed a motion to vacate or to stay the general order and argued the following. The general order abrogated the rational legislative scheme pertaining to the medical treatment of sick, injured, or ill minors promulgated by the legislature in the Juvenile Court Act of 1987 (the Act) (Ill. Rev. Stat. 1991, ch. 37, par. 801—1 et seq.). The legislature authorized law enforcement personnel

---

[1]The general order was reissued on October 22, 1990, to amend this language to read: "may be conducted."

to take into temporary custody a minor "who is found in any street or public place suffering from any sickness or injury which requires care, medical treatment or hospitalization." (Ill. Rev. Stat. 1991, ch. 37, pars. 802—5(c), 803—8(c), 804—4(c).) The police officer is required to take the child to a medical facility or a hospital. (Ill. Rev. Stat. 1991, ch. 37, par. 802—7(1).) After the child is taken to a hospital or medical facility, the law enforcement officer must contact the minor's parents, guardians, or person with whom he resides and notify the Department of Children and Family Services. (Ill. Rev. Stat. 1991, ch. 37, par. 802—7(1)(b).) The officer was not given the statutory authority to make any decisions regarding treatment.

The public defender further argued the following. The issuance of the general order exceeded the court's rulemaking power that was limited to administrative matters. The general order was in derogation of parental rights, was unconstitutionally overbroad and vague, authorized the illegal seizure of sick minors in violation of the fourth amendment, and violated the separation of powers doctrine.

The State's Attorney did not file a written response to the motion. The State's Attorney argued at the hearing on the motion that the general order was authorized by the Act. It did not argue that the issue was not ripe or that the public defender did not have standing to challenge the general order.

The trial court denied the motion. The public defender appealed.

The State's Attorney moved to dismiss the appeal and argued the following: (1) the issue was not ripe for review; (2) there was no case or controversy existing; (3) the public defender did not have standing; (4) the public defender did not allege any injury in fact or a legally protected interest belonging to it; and (5) there were no named parties before the court.

The public defender moved this court either to allow the appeal or to take the issue of jurisdiction with the case.

The State's Attorney's motion to dismiss the appeal was not ruled upon, and the public defender's motion was allowed. This court ordered that it would take the issue of jurisdiction with the case.

The State argues that we should dismiss the appeal because in order to have a live case, there must be an actual controversy, a struggle between the rights or interests of actual parties, and those issues must presently exist. The State points out that cases should not be reviewed merely to guide future litigation or establish precedent. *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235, 437 N.E.2d 638.

■ We find that this court has jurisdiction, and we will not dismiss the case on the basis of lack of standing and ripeness because these

issues were raised for the first time on appeal. The issue of ripeness was waived because it was not raised below. (*Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 240, 500 N.E. 2d 787.) The issue of standing was also not raised below and it also was waived. *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 508, 524 N.E.2d 561 (lack of standing is an affirmative defense that will be waived if not timely raised in the trial court); *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 601-02, 169 N.E.2d 73 (the city could not on appeal object that the plaintiffs lacked standing because they did not allege or show special injury, where the question of standing was not presented to the trial court).

Even if the issue of ripeness had been raised in the trial court and even if the case was not ripe, we would review the denial of the motion to vacate or stay the general order. The Illinois Supreme Court has held that in determining whether a case exhibits the requisite degree of public interest for an exception to the mootness doctrine to apply, we should look to "the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622, 104 N.E.2d 769.) The same reasoning should permit an exception to the ripeness doctrine. We hold that this case meets the public interest exception criterion quoted above from *Labrenz* and that the issue should be addressed despite the absence of an actual case involving a minor.

■ We hold that the general order was void as an improper exercise of legislative power by the judiciary. The Illinois Constitution provides that the legislative, executive, and judicial branches are separate and that no branch shall "exercise powers properly belonging to another." (Ill. Const. 1970, art. II, § 1.) The separation of powers doctrine applies when one branch seeks to exert a substantial power belonging to another. (*People v. O'Donnell* (1987), 116 Ill. 2d 517, 527, 508 N.E.2d 1066.) The general order's provision that the officer could consent to the medical examination of a minor in his custody created a law, and, therefore, the court improperly exercised legislative power. See *Fenske Brothers, Inc. v. Upholsterers' International Union of North America, Local No. 18* (1934), 358 Ill. 239, 250, 193 N.E. 112 (to declare what the law is or has been is a judicial power; to declare what the law shall be is a legislative power).

In the case of *In re Peak* (1978), 59 Ill. App. 3d 548, 375 N.E.2d 862, the Department of Mental Health and Developmental Disabilities appealed from the entry of an order of the trial court requiring the Department to pay the expenses of treatment and care for a

minor committed by the court to a private psychiatric children's hospital rather than an institution of the Department. The issue was whether the juvenile court could grant relief beyond that specified by statute. The court held that the circuit court may not exceed its statutory authority "no matter how desirable or beneficial the attempted innovation might be." *Peak*, 59 Ill. App. 3d at 552.

In the case of *In re Petition of Owen* (1973), 54 Ill. 2d 104, 295 N.E.2d 455, the juvenile court entered an order against the Department of Corrections enjoining the continuation of practices then in effect regarding the disciplinary use of solitary confinement and tranquilizing drugs. It also ordered the promulgation of regulations regarding the use of these devices in disciplining or treating wards of the court. The court further required the Department of Corrections to establish guidelines for the use of any disciplinary proceedings taken against the wards of the court. The Illinois Supreme Court recognized that section 5—8 of that act (Ill. Rev. Stat. 1969, ch. 37, par. 705—8) conferred upon the court certain powers of supervision with regard to the wards of the court. (*Owen*, 54 Ill. 2d at 109.) Nonetheless the court held that it was

> "not aware of any case wherein the authority granted by the Act has been construed to authorize the court to establish detailed procedures for the care and discipline of its wards while committed to an institution under the supervision of the Department of Corrections. The order of the court in this case applies only to the wards of the juvenile division of the circuit court of Cook County. If the juvenile division of the court in each county in Illinois were to undertake to prescribe specific procedures to be used in treating and disciplining its wards, the divergence of thought among the several courts to what constitutes correct treatment and discipline of its wards could make it impossible to operate an institution." (*Owen*, 54 Ill. 2d at 109.)

The court held that the juvenile court had no authority to attempt to establish treatment and disciplinary procedures for its wards committed to the custody of the Department of Corrections. *Owen*, 54 Ill. 2d at 109-10.

In the case of *In re Washington* (1976), 65 Ill. 2d 391, 359 N.E.2d 133, the juvenile court entered an injunction prohibiting certain practices at the St. Charles Youth Center relating to the use of solitary confinement. The court held that no provision of the Juvenile Court Act authorized the court "to prescribe procedures for the care and discipline of its wards, and thereby intrude upon traditional matters of internal institutional administration." *Washington*, 65 Ill. 2d at 398.

Existing statutes provide sufficient provisions to provide necessary medical treatment to minors. There is a statute that provides that a hospital or physician need not obtain the parent's or legal guardian's consent for emergency treatment of a minor where "the obtaining of consent is not reasonably feasible under the circumstances without adversely affecting the condition of such minor's health." (Ill. Rev. Stat. 1991, ch. 111, par. 4503(a).) In a case in which a minor is the victim of sexual abuse or assault, no consent need be obtained from the child's parent or legal guardian in order to provide medical care or counseling related to the diagnosis or treatment of any disease or injury caused by the offense. Ill. Rev. Stat. 1991, ch. 111, par. 4503(b).

The Department of Children and Family Services in emergency situations must immediately commence an investigation of suspected child abuse regardless of the hour. (Ill. Rev. Stat. 1991, ch. 23, par. 2057.4(b)(2).) Further, the Department has the capacity to provide for emergency services to the child. Ill. Rev. Stat. 1991, ch. 23, par. 2057.4(b)(3).

When law enforcement officers transport a minor to a hospital, the law provides physicians certain responsibilities. A physician is responsible for providing care for the minor if he takes temporary protective custody of the child and is expressly authorized to perform certain medical treatment even if it is not considered an emergency. (Ill. Rev. Stat. 1991, ch. 23, par. 2055.) In the course of rendering these medical services, physicians are expressly exempted from liability that might be imposed as a result of granting permission for emergency treatment. Ill. Rev. Stat. 1991, ch. 23, par. 2055.

The Juvenile Court Act of 1987 requires a temporary custody hearing within two working days for a minor who has been taken into temporary protective custody. (Ill. Rev. Stat. 1991, ch. 37, par. 802—9(1).) It is then the duty and obligation of the temporary custodian to ensure that further medical care is provided if it is necessary. (Ill. Rev. Stat. 1991, ch. 37, par. 801—3(9).) A court may authorize a physician or a hospital to provide medical or surgical procedures if such procedures are necessary to safeguard the minor's life or health. (Ill. Rev. Stat. 1991, ch. 37, par. 802—11.) We find that Illinois law now provides sufficient mechanisms to provide all urgent medical needs of minors without the general order of October 11, 1990, issued by the Juvenile Division of the circuit court of Cook County.

We find that the general order exceeded the circuit court's power which in this case was limited to issuing orders concerning administrative matters of the juvenile court.

The general order of October 11, 1990, issued by the juvenile division of the circuit court of Cook County is an impermissible judicial exercise of legislative power and is set aside and vacated.

Reversed.

RIZZI and GREIMAN, JJ., concur.