2003 OK CIV APP 85

Milford BURGESS, Plaintiff/Appellant,

and

Ida Burgess, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Appellee,

and

Tommy Ray Lepley, an individual, Defendant.

No. 99,431.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 8, 2003.

Dale Warner, Tulsa, OK, for Plaintiff/Appellant.

William F. Smith, Gladd & Smith, Tulsa, OK, for Defendant/Appellee.

Opinion by CAROL M. HANSEN, Judge.

¶ 1 In this personal injury action, Appellant, Milford Burgess (Burgess) [1], appeals from summary judgment in favor of Appellee, State Farm Mutual Automobile Insurance Company (State Farm), from whom Burgess was seeking payment under uninsured motorist (UM) coverage.[2] We hold the trial court correctly applied the rule of *lex loci contractus* to find no available UM coverage under State Farm's Kansas policies issued to Burgess.

¶ 2 The dispositive facts were stipulated. Burgess and his wife Ida were injured in Tulsa while riding in a vehicle owned and driven by their daughter, Carol Wilson (Wilson). Wilson's vehicle was struck by a vehicle driven by Defendant Tommy Ray Lepley (Lepley), who was at the time speeding and intoxicated. The accident was solely Lepley's fault. Burgess was hospitalized in Tulsa for a month, incurring medical expenses exceeding $40,000.00. At the time, Burgess was a resident of Kansas. Wilson and Lepley were residents of Oklahoma.

---

1. Plaintiff Ida Burgess' case was bifurcated. She received a judgment of $40,000.00 against Defendant Tommy Lepley. Neither are directly involved as parties to this appeal.

2. The appeal is submitted without appellate briefing in accordance with the accelerated procedure under Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch.15, App.

¶ 3 Burgess had UM coverage with State Farm on two separate Kansas policies, each in the amount of $100,000.00. These policies were issued to Burgess as a Kansas resident for vehicles garaged there. Lepley's Oklahoma vehicle insurance provided $100,000.00 liability coverage, which was paid to Burgess in settlement of his claims against Lepley. Wilson's Oklahoma UM coverage, with State Farm, was $10,000.00, which was also paid to Burgess. Burgess' damages, though not finally determined, exceeded the total of Lepley's liability and Wilson's UM coverages.

¶ 4 The parties further stipulated that Burgess' Kansas policies provided that the UM coverage would not "stack", that is, the policy limits could not be added or combined, regardless of the number of vehicles involved or total amount of coverage for all the vehicles listed under a policy, or policies, to determine the limit of coverage. *See, Herren v. Farm Bureau Mut. Ins. Co.*, 2001 OK CIV APP 82, 26 P.3d 120. Burgess' policies also provided that the UM coverage would be reduced by the amount paid or payable by the tortfeasor. Each of these provisions is consistent with Kansas statutes.[3]

¶ 5 In its Motion for Summary Judgment, State Farm argued that the net result of these policy provisions was that UM coverage was not available under Burgess' policies. State Farm reasoned that because the policies do not stack, only one $100,000.00 UM coverage limit was available to Burgess. Further, State Farm argues, this one available $100,000.00 limit is entirely set off by the $100,000.00 liability payment received from the tortfeasor, Lepley. The net effect according to State Farm's position is zero coverage under Burgess' Kansas policies.

¶ 6 Burgess countered that the Kansas anti-stacking law was contrary to Oklahoma public policy, citing *Bohannan v. Allstate Ins. Co.*, 1991 OK 64, 820 P.2d 787, and should be unenforceable here. The trial court disagreed and granted summary judg-

ment in favor of State Farm. Burgess appeals from that judgment.

¶ 7 Both Burgess and State Farm cited *Bohannan,* and *Herren, supra,* in support of their requests for summary judgment. In *Bohannan,* a matter certified to the Oklahoma Supreme Court by the Tenth Circuit Court of Appeals, the facts are very similar to those here. There, Bohannan, a California resident was injured in a vehicle accident [a] in Oklahoma, [b] while a passenger in a vehicle owned and driven by an Oklahoma resident, and [c] due entirely to the fault of an Oklahoma resident.

¶ 8 As here, Bohannan settled for the liability limits of the tortfeasor's policy and received the UM limits of the Oklahoma policy covering the vehicle in which she was riding. Bohannan had UM coverage under an Allstate Insurance Company California policy. Allstate denied Bohannan's UM claim, asserting under California law it could subtract the amount of the Oklahoma liability and UM payments, reducing its UM liability to zero.

¶ 9 The question certified was whether California or Oklahoma law determined the application and effect of the UM provisions of the California policy. The Oklahoma Supreme Court determined it would "remain aligned with those states that continue to follow the *lex loci contractus*[4] rule", but modified the rule as follows:

> The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

¶ 10 Applying the foregoing standard, the *Bohannan* Court determined that application of California's non-stacking or set-off law to reduce the California UM coverage, by the

---

3. *See,* K.S.A. § 40–284(b) & (d).

4. This rule is "used sometimes to denote the law of the place where the contract is made, and at other times to denote the law by which the

contract is to be governed (*i.e.* place of its performance)." Black's Law Dictionary 911 (6th. ed.1990); *Herren,* 26 P.3d at 122. The rule is codified in Oklahoma at 15 O.S.2001 § 162.

amount of the Oklahoma UM coverage, would deny Bohannan the realization of the benefits as a first party insured under the Oklahoma insurance contract, and would allow the California insurer a windfall. The Court concluded such result would "offend the legislative policy expressed in [36 O.S. 2001] § 3636, which allows stacking and bars set-off for payments from the tortfeasor. The Court summarized:

> Thus, any provision in the California UM contract which prohibits stacking of Oklahoma UM coverage with the California coverage or which allows Oklahoma UM benefits to be a credit or set off against the UM benefits under the California contract violates Oklahoma public policy and is unenforceable in an Oklahoma forum.

¶ 11 Burgess concedes the $100,000.00 payment under Lepley's Oklahoma liability coverage may be set-off against the Kansas UM coverage under *Bohannan.* The Court there found such set-off was not precluded under Oklahoma law and therefore did not offend Oklahoma public policy. Burgess, however, asserts prohibiting stacking or allowing a credit against Oklahoma UM benefits is "problematical". While we agree, the ultimate facts here, while similar, are distinguishable from those in *Bohannan.*

¶ 12 In *Bohannan,* Allstate refused to stack its California UM benefits from a single policy with the Oklahoma UM benefits. The Court there found this was antithetical to the purpose of Oklahoma's UM law, particularly § 3636, which is to "assure each person the contracted coverage for personal injury damages caused by a financially irresponsible, tortious motorist for each premium paid. *Bohannan,* 820 P.2d at 792.

¶ 13 In the matter before us, however, State Farm's refusal to stack UM benefits did not implicate Oklahoma UM coverage. Rather, the non-stacking provision was applied to two *Kansas* policies. The premium for those Kansas policies was determined in accordance with Kansas anti-stacking laws. *See, Bohannan* at 793. The anti-stacking provision, under the stipulated facts here, did not offend Oklahoma's public policy as expressed in § 3636.

¶ 14 Similarly, State Farm set off the allowable $100,000.00 UM limit against Lepley's $100,000.00 liability coverage, and not against Wilson's $10,000.00 UM coverage. As noted above, Burgess concedes setting off the California UM coverage against Oklahoma liability coverage was expressly approved in *Bohannan. Bohannan* provides no relief for Burgess.

¶ 15 *Herren* is equally unsupportive of Burgess' position. There, the injured plaintiff, Herren, was an Oklahoma resident at the time she was injured in a vehicular accident in Miami, Oklahoma. She was insured under a Missouri policy issued while she was resident there, and four Kansas policies issued while her husband was resident in Kansas. She was not insured under any Oklahoma policy.

¶ 16 Under the Missouri policy, UM coverage was available only if the tortfeasor had no liability coverage, or if the coverage was less than the minimum required by law. The tortfeasor in *Herren* did have the minimum liability coverage. As here, the Kansas policies provided they could not be stacked, and also that UM coverage would be available only if the tortfeasor's liability coverage was less than the UM coverage of the policy. Without stacking, the tortfeasor's liability coverage was equal to each of the Kansas policies issued to Herren's husband. The trial court granted summary judgment in favor of both insurers. On appeal Herren argued this was error in that exceptions to the *lex loci contractus* rule were applicable.

¶ 17 After discussing the facts and holding in *Bohannan,* the *Herren* Court held:

> Because Joyce Herren was not an insured under any Oklahoma [UM] coverage, application of the Kansas and Missouri provisions barring [UM] coverage could not affect [UM] coverage as it did in *Bohannan.* Thus, as in *Bohannan,* there is no violation of Oklahoma public policy as expressed in § 3636.

¶ 18 Here, while Burgess was an insured under Oklahoma UM coverage, State Farm's refusal to stack coverage and its set off against Oklahoma liability benefits did not deny Burgess any Oklahoma benefits contrary to *Bohannan.* We perceive no violation of Oklahoma public policy. As the Court of Civil Appeals noted in *Herren,* at 123:

A conflict with Oklahoma law is not equivalent to a violation of Oklahoma public policy. ... under *Bohannan* the public policy exception may be invoked only where the other state's laws [1] violated a "clearly expressed" public policy intended to apply to insurance policies effective in Oklahoma, or [2] would effectively deprive the insured of benefits bargained for under an Oklahoma insurance policy. Neither circumstance is present here. (Citations omitted).

■ ¶ 19 We hold there is no basis for an exception to the *lex loci contractus* under the facts now before us. In the absence of evidence establishing the Kansas policies provided for a place of performance, we interpret the contracts according to the law and usage of the place where they were made, that is, Kansas. *See, Herren,* 26 P.3d at 122; 15 O.S.2001 § 162. Under Kansas law, UM benefits from the two Kansas policies may not be stacked and the Kansas UM benefits may be set off against the Oklahoma liability coverage. There was no UM coverage available from Burgess' Kansas policies. The trial court's judgment is accordingly AFFIRMED.

JONES, J., and MITCHELL, P.J., concur.