Filed 11/6/09          NO. 4-09-0326

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, | ) ) | Appeal from Circuit Court of |
|    Plaintiff-Appellee, | ) | Macon County |
|    v. | ) | No. 08MR74 |
| ROGER L. SLIFER, | ) | |
|    Defendant, | ) | |
|    and | ) | |
| HELEN M. BROWN, Independent | ) | |
| Administratrix of the Estate of LEE | ) | Honorable |
| J. WEST, Deceased, | ) | Albert G. Webber, |
|    Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In July 2007, defendant, Helen M. Brown, independent administratrix of the estate of Lee J. West, deceased, sued defendant, Roger L. Slifer, under (1) the Wrongful Death Act (740 ILCS 180/0.01 through 2.2 (West 2002)) and (2) section 27-6 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/27-6 (West 2002)) for the August 2002 hit-and-run death of her son, West. In May 2008, plaintiff, American Standard Insurance Company of Wisconsin (American Standard), filed an amended complaint for declaratory judgment under section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2008)), arguing that it was not obligated to indemnify Slifer against Brown's claims because Slifer failed to comply with the prompt-notification provision of his insurance policy. In January 2009, American Standard and Brown filed cross-motions for summary judgment on American Standard's amended complaint for declaratory judgment.

In March 2009, the trial court denied Brown's motion for summary judgment and granted summary judgment in favor of American Standard. Brown appeals.

Because we conclude that (1) the notice provision that directed Slifer to promptly notify American Standard of any car accidents or losses was part of the contractual agreement of his insurance policy and (2) Slifer failed to notify American Standard of the August 2002 accident in accordance with that notice provision, we affirm.

I. BACKGROUND

The following facts were taken from the parties' pleadings and other documents filed with the trial court.

On August 2, 2002, West was walking down a rural road when he was struck by a hit-and-run driver. West was eventually discovered and taken to a hospital, where he died the following day from his injuries.

In June 2007, Slifer confessed to police that he drove the vehicle that struck and killed West. Slifer later pleaded guilty to failure to report an accident involving great bodily harm or death and was sentenced to 14 years in prison.

In July 2007, Brown filed a complaint at law against Slifer, seeking compensatory damages under (1) the Wrongful Death Act (740 ILCS 180/0.01 through 2.2 (West 2002)) and (2) section 27-6 of the Probate Act (755 ILCS 5/27-6 (West 2002)) for the August 2002 death of West.

In May 2008, American Standard filed an amended com-

plaint for declaratory judgment under section 2-701 of the Code (735 ILCS 5/2-701 (West 2008)), arguing that it was not obligated to provide indemnity, coverage, protection, or any other benefit relating to Brown's claims because Slifer had failed to comply with the prompt-notification provisions of the vehicle insurance policy in effect in August 2002.

In January 2009, American Standard and Brown filed cross-motions for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2008)). American Standard argued that because Slifer failed to comply with the notice provision of his policy by concealing the August 2002 accident for over five years, he breached his contractual obligation and was not entitled to the coverage afforded by the policy. Thus, American Standard contended that it was not obligated to indemnify Slifer for any claims arising from Brown's suit. Brown argued that (1) the notice provision was ambiguous and (2) because the notice provision appeared before the "Agreement" section of the policy--in which she claimed the parties' contractual duties and obligations were set forth--the notice provision was merely advisory rather than contractually binding.

The location of the notice provision at issue appeared on the first page of Slifer's insurance policy as follows:

"IF YOU HAVE AN AUTO ACCIDENT OR LOSS

NOTIFY US

Tell us promptly. Give time, place, and

details. Include names and addresses of

- 3 -

injured persons and witnesses.

OTHER DUTIES

Each person claiming any coverage of this policy must also:

> 1. Assist us in any claims or suits.

> * * *

> 6. Give us statements and answer questions under oath when asked by any person we name as often as we reasonably ask, and sign copies of the answers.

Each person claiming Uninsured Motorist coverage must promptly notify the police if a hit-and-run driver is involved.

Each person claiming Car Damage coverages must also:

> 1. Take responsible steps after loss to protect the vehicle and its equipment from further loss. ***

> * * *

> 4. Answer questions under oath when asked by any person we name as often as we reasonably ask, and sign copies of the answers

AGREEMENT

"         We agree with <u>you</u>, in return for your premium

         payment, to insure <u>you</u> subject to all the

         terms in this policy.  <u>We</u> will insure <u>you</u> for

         the coverages and the terms of liability in

         the declarations of this policy."  (Emphases

         in original.)

Following the aforementioned "Agreement" section, a separate section defined terms used throughout the policy.  The remainder of the policy consisted of six parts that delineated the following: (1) liability coverage, (2) medical-expense coverage, (3) uninsured-motorist coverage, (4) car-damage coverages, (5) emergency-road-service coverage, and (6) general provisions.

         In March 2008, the trial court entered a written order granting American Standard's summary-judgment motion and denying Brown's summary-judgment motion.

         This appeal followed.

         II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

         A. Summary Judgment and the Standard of Review

         "Summary judgment is appropriate where the pleadings, depositions, admissions[,] and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.</u>, 227 Ill. 2d 102, 106, 879 N.E.2d 305, 308 (2007); see 735 ILCS 5/2-1005(c) (West 2008).  Summary judgment should be granted

- 5 -

only if the movant's right to judgment is clear and free from doubt. <u>Bluestar Energy Services, Inc. v. Illinois Commerce Comm'n</u>, 374 Ill. App. 3d 990, 993, 871 N.E.2d 880, 884 (2007). We review <u>de</u> <u>novo</u> the trial court's grant of summary judgment. <u>Reppert v. Southern Illinois University</u>, 375 Ill. App. 3d 502, 504, 874 N.E.2d 905, 907 (2007).

B. Brown's Claim That the Trial Court Erred by Granting
American Standard's Motion for Summary Judgment

Brown argues that the trial court erred by granting American Standard's motion for summary judgment. Specifically, Brown contends that the notice provision was ambiguous because (1) it appeared before the section of the policy entitled "Agreement" and (2) it was not expressed in mandatory terms. Thus, Brown asserts that the court should have construed the aforementioned ambiguities against American Standard and in favor of coverage. We address Brown's contentions in turn.

1. <u>Brown's</u> <u>Claim</u> <u>That</u> <u>the</u> <u>Notice</u> <u>Provision</u> <u>Was</u> <u>Ambiguous</u>

a. The Location of the Notice Provision

Brown contends that the notice provision was ambiguous because it appeared before the section of the policy entitled "Agreement." We disagree.

If the words of an insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. <u>Central Illinois Light Co. v. Home Insurance Co.</u>, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004). This is especially true with regard to provisions that limit or exclude

- 6 -

coverage.  Outboard Marine Corp. v. Liberty Mutual Insurance Co.,
154 Ill. 2d 90, 119, 607 N.E.2d 1204, 1217 (1992).  However, "[a]
contract is not rendered ambiguous merely because the parties
disagree on its meaning."  Central Illinois Light Co., 213 Ill.
2d at 153, 821 N.E.2d at 214.  "Although policy terms that limit
an insurer's liability will be liberally construed in favor of
coverage, this rule of construction only comes into play when the
policy is ambiguous."  Hobbs v. Hartford Insurance Co. of the
Midwest, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005).

Although Brown contends that the notice provision was
ambiguous, she does not base this contention on a claim that the
words used to construct the provision were susceptible to differ-
ent interpretations.  Rather, Brown claims that the notice
provision was ambiguous solely because it appeared before the
"Agreement" section of the policy.  Brown maintains that an
ambiguity exists because the notice provision was merely advisory
rather than contractually binding.

To the extent that Brown argues that the language of
the notice provision created an ambiguity, we reject her claim.
Our review of the plain language of the notice provision shows
that--with regard to the reporting requirement--the provision is
unambiguous in that it plainly directs Slifer to promptly notify
American Standard in the event of an accident or loss.  Thus, we
conclude that the language of the notice provision at issue is
not ambiguous.

b. The Language of the Notice Provision

Brown also contends that the notice provision was merely advisory and not contractually binding because it was not expressed in mandatory terms--that is, the terms of the notice provision were not sufficiently imperative.  We disagree.

Because Brown essentially contests the effect of the notice provision of Slifer's insurance policy, the task before us involves interpreting that provision within the context of Slifer's and American Standard's intent when they entered into the contractual agreement.

In Rich v. Principal Life Insurance Co., 226 Ill. 2d 359, 371, 875 N.E.2d 1082, 1090 (2007), the supreme court out-lined the rules that govern the court's interpretation of insurance policy language as follows:

> "When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy.  [Citations.]  Because the court must assume that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision [citation], and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract [ci-

- 8 -

tations]. 'All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it ***.' [Citation.] If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning [citation], and the policy will be applied as written, unless it contravenes public policy [citation]."

By its very terms, the insurance policy agreement between Slifer and American Standard stated that American Standard would provide insurance to protect Slifer's interests if a car accident occurred in which (1) he suffered a loss due to the negligence of another motorist or, in the alternative, (2) it was determined that he was negligent--that is, American Standard would defend and indemnify Slifer. In exchange for providing that insurance protection, American Standard would receive adequate compensation for assuming the risk it was underwriting on Slifer's behalf.

Inherent to the successful operation of their contractual agreement is the intention that if Slifer experienced an accident or loss--regardless of fault--he would report the claim to American Standard so that it could not only protect Slifer's interests according to the terms of the policy but also protect its interests as well. See Barrington Consolidated High School v. American Insurance Co., 58 Ill. 2d 278, 281, 319 N.E.2d 25, 27

- 9 -

(1974) (A notice provision affords an "insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence").

Consistent with the aforementioned intent, the first and only section that includes a notice provision prominently appears before the "Agreement" section and is couched in mandatory terms. Specifically, immediately after the notice provision--which we note is the first provision of the policy--the "Other Duties" subsection specifically refers to the notice provision by mandating that "[e]ach person claiming any coverage of this policy must also" perform other functions associated with processing a claim. (Emphasis added.) In addition, each of the two subsections following that provision contain mandatory language pertaining to uninsured-motorist claims and car-damage claims.

Our review of the plain meaning of the notice provision of Slifer's insurance policy--within the context of the entire policy--indicates that he had a contractual obligation to promptly report the August 2002 accident that resulted in West's death to American Standard. To conclude otherwise, as Brown urges, would essentially render the notice provision a nullity, which would (1) violate our mandate to assume that every provision serves a purpose and (2) thwart the aforementioned intent of Slifer and American Standard when they entered into the contractual agreement. Thus, although we agree that American Standard could have structured its policy to better convey the mandatory

nature of the notice provision, we nonetheless reject Brown's contention that the notice provision was merely advisory rather than contractually binding because it was not expressed in mandatory terms.  However, our analysis does not end here.

2. Slifer's Compliance With the Notice Provision

In this case, the uncontested facts are that (1) in August 2002, Slifer drove a vehicle that struck and killed West; (2) at the time of the accident, Slifer had a valid insurance policy with American Standard; (3) Slifer failed to report the August 2002 accident in accordance with the notice provision of his insurance policy; and (4) American Standard did not learn of Slifer's accident until August 6, 2007, over five years later. Thus, given that we have previously concluded that the notice provision of Slifer's insurance policy with American Standard was contractually binding, we further conclude that Slifer breached the terms of his insurance policy when he failed to notify American Standard of the August 2002 accident in accordance with that provision.  We find support for our conclusion that Slifer breached the terms of his insurance policy in the Second District's decision in American Country Insurance Co. v. Bruhn, 289 Ill. App. 3d 241, 682 N.E.2d 366 (1997), which did not address the binding nature of the notice provision but did involve similar facts and a similarly worded notice provision.

In Bruhn, 289 Ill. App. 3d at 243, 682 N.E.2d at 367, Todd Raymond Nebel was driving his vehicle when he struck and killed two pedestrians.  Nebel concealed his involvement in the

- 11 -

hit-and-run accident until three years and eight months later when he confessed to police. Bruhn, 289 Ill. App. 3d at 243, 682 N.E.2d at 367. The administratrix of the decedents' estate subsequently sued Nebel for negligence, wrongful death, and intentional infliction of emotional distress. Bruhn, 289 Ill. App. 3d at 243, 682 N.E.2d at 368. American Country Insurance Company (American) later filed a complaint for declaratory judgment, claiming that although it had issued the car insurance policy in effect at the time of accident, it had no duty to defend Nebel because he failed, in part, to comply with the notice provisions of his policy. Bruhn, 289 Ill. App. 3d at 243-44, 682 N.E.2d at 368. At a hearing on American's complaint, the trial court granted Bruhn's motion for directed finding after the close of American's case, finding that Nebel's notice to American was sufficient under the insurance policy's notice provision. Bruhn, 289 Ill. App. 3d at 246, 682 N.E.2d at 369.

In reversing the trial court determination, the Second District concluded, in part, that, while not an absolute bar to coverage in every circumstance, (1) Nebel had breached the mandatory notice provision of his insurance policy (Bruhn, 289 Ill. App. 3d at 249, 682 N.E.2d at 371) by not reporting the accident until three years and eight months later and (2) public policy did not preclude denial of coverage (Bruhn, 289 Ill. App. 3d at 250-51, 682 N.E.2d at 372-73).

Accordingly, we conclude that the trial court did not err by granting American Standard's motion for summary judgment.

- 12 -

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and TURNER, J., concur.